E-FILED

Thursday, 04 October, 2007  12:05:11 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  07-30011 |
| | ) | |
| TIMOTHY HUDDLESTON, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>OPINION</u>

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on Defendant Timothy Huddleston's Objections to Report and Recommendation on Motion to Suppress (d/e 22) (Objections).  Huddleston filed a Motion to Quash Arrest and Suppress Evidence (d/e 9) (Motion).  The Court referred the Motion to United States Magistrate Judge Byron G. Cudmore to conduct an evidentiary hearing and issue a Report and Recommendation on the Motion.  <u>Text Order entered June 21, 2007</u>.  Judge Cudmore conducted an evidentiary hearing on July 16, 2007, and recommended denying the Motion.  <u>Report and Recommendation entered July 19, 2007 (d/e 18)</u>.  Huddleston now objects.  This Court must review the Motion and the

Report and Recommendation <u>de novo</u>.  28 U.S.C. §§ 636(b)(1)(B)&(C).
The Court has reviewed the transcript of the hearing, the evidence
submitted at the hearing, the Objections, the additional material by
Huddleston, and arguments submitted by the parties.  For the reasons set
forth below, the Court overrules the Objections and adopts the Report and
Recommendation.

<u>STATEMENT OF FACTS</u>

On December 30, 2006, at 12:43 a.m., Springfield Police Officer
Christopher Rhodes was dispatched to respond to a "man with a gun" call
at 1850 South Wirt Street, Springfield, Illinois (Residence).  <u>Transcript of
Proceedings on July 16, 2007 (d/e 23) (T.)</u>, at 19.  Based on the nature of
the call, Officer Rhodes approached the address in his squad car with his
headlights off.  Upon arriving, he met the caller, Dorothy White, in the
street approximately three houses north of the Residence.  <u>T.</u>, at 20.
Springfield Police Officer Jeffery Larson and Springfield Police Officer
Andrew Todd were also at the scene.[1]  Rhodes testified at the suppression
hearing that White told him that she and her husband owned the Residence

---

[1]Judge Cudmore refers to Officer Todd as Officer Dodd.  <u>Report and
Recommendation (d/e 18)</u>, at 4.  According to the Transcript, his last name was Todd.
<u>E.g.</u>, <u>T.</u>, at 24.

and that her daughter, Tarana White, was the tenant that rented the Residence. According to Rhodes, Dorothy White informed him that Tarana White's boyfriend, Defendant Huddleston, had called and threatened Tarana White. Dorothy White told Rhodes that Tarana White was then at Dorothy White's home elsewhere in Springfield. Dorothy White told Rhodes that Tarana White and Huddleston were dating. T., at 21-22; Defendant's Reply to United States' Response to the Defendant's Objections to the Report and Recommendation (d/e 26), ¶¶ 1-2.

Rhodes testified that he was familiar with Huddleston and knew that his criminal record included charges of aggravated discharge of a weapon. T., at 23. Dorothy White told Rhodes that she came to lock up the Residence. She told Rhodes that when she arrived she entered the house and found Huddleston sitting on the couch in the front room asleep. She said she saw an object in Huddleston's hand. The object appeared to be the handle of a gun, but the rest of the object was concealed under a pillow. T., at 21-22, 34, 39.

Rhodes testified that Dorothy White told him that she had the keys to the house and that Huddleston did not have permission to be there and had not been staying there. White then gave the officers permission to

enter the Residence.  T., at 22.  According to Dorothy White, one of the officers asked her about the perimeter of the Residence.  Dorothy White testified that she told the officers not to worry because Huddleston was asleep and was not going anywhere.  T., at 90.

Rhodes conferred briefly with Larson and Todd.  The officers decided to enter the Residence and take control of Huddleston.  Rhodes stated that the officers decided to act quickly for officer safety and the safety of the neighborhood based on Huddleston's known past history, the possible gun, and the threat to Tarana White.  T., at 45-47, 49.[2]

Larson testified that he approached the Residence first.   He announced "Springfield Police" and directed Huddleston to show himself.  There was no response.  Larson then looked inside the Residence and saw an African American man asleep on the couch with his hand under a pillow.  Larson and the other two officers then entered the Residence and found Huddleston asleep on the couch wearing a winter coat and gloves.  T., at 53. He had a .44 Magnum Ruger revolver in his hand.  The officers took the

---

[2]Rhodes also stated that the officers relied on Dorothy White's consent to the enter the Residence.  T., at 41.  The Court does not address whether Dorothy White could effectively consent to the search of the Residence because, as explained below, the warantless entry was reasonable under the Fourth Amendment due to the exigent circumstances.

weapon and arrested Huddleston.  T., at 25-26.

Tarana White testified at the evidentiary hearing that Huddleston had, in fact, been living at the Residence.[3]  Rhodes testified that Tarana White told him after the arrest that Huddleston was living temporarily at the Residence.  Transcript, at 35-36.  There was no evidence that the officers were aware of the fact that Huddelston was living at the Residence before they entered the Residence.

## ANALYSIS

Generally, an officer must obtain a warrant before entering a residence.  Payton v. New York, 445 U.S. 573, 576 (1980).  An officer, however, may enter without a warrant if exigent circumstances require immediate action.  United States v. Kempf, 400 F.3d 501, 503 (7th Cir. 2005).  "Exigent circumstances exist when there is a reasonable belief by police that their safety, or the safety of the public, may be threatened."  United States v. Webb, 83 F.3d 913, 916 (7th Cir. 1996).  In this case, the information known to the officers was that an individual with a violent

---

[3]Judge Cudmore determined that Huddleston had a sufficient expectation of privacy in his occupancy of the Residence to have standing to assert a Fourth Amendment claim.  Report and Recommendation, at 10.  The Court agrees with Judge Cudmore for the reasons set forth in the Report and Recommendation.  The Government does not challenge Huddleston's standing.

criminal record had threatened Tarana White, the tenant of the Residence, and had entered the Residence without permission while carrying a weapon. As Judge Cudmore correctly pointed out, the officers reasonably believed that Huddleston was committing a criminal trespass while he waited for Tarana White with a gun in his hand. <u>Report and Recommendation</u>, at 16. The Court agrees with Judge Cudmore, that under these circumstances, the officers had a reasonable belief that Huddleston presented a threat to them and the public. If he had awakened while they waited the hours necessary to prepare a warrant application and presented it to a judge, Huddleston could have shot them or others in the neighborhood. The officers reasonably believed that exigent circumstances existed. Their entry into the Residence, therefore, did not violate the Fourth Amendment.

Huddleston argues that the officers knew that he was not trespassing, but had been living at the Residence. Huddleston relies on an Affidavit executed on January 25, 2007, by USMS Task Force Agent Ryan Machin. <u>Objections to Report and Recommendation on Motion to Suppress (d/e 22)</u>, Exhibit A, <u>Machin Affidavit</u>. Machin states that Huddleston had been living with Tarana White at the Residence. <u>Machin Affidavit</u>, ¶ 1. The Machin Affidavit does not state when officers learned that Huddleston was

living at the Residence. The testimony of Rhodes and Tarana White establish that, after Huddleston was arrested, she told the officers that Huddleston was living temporarily at the Residence. Furthermore, Machin corroborates Rhodes' testimony that Dorothy White told him that Huddleston did not have permission to remain at the Residence. Id., ¶ 2. Thus, even based on the Machin Affidavit, the officers reasonably believed that Huddleston did not have permission to be in the Residence. Huddleston was sitting in the Residence, holding a gun, waiting for the tenant -- the person he had threatened. The officers reasonably believed he was a threat to the officers' safety and the safety of others.

Huddleston also argues that a real question exists regarding whether the officers reasonably believed that Huddleston was holding a weapon. The Court disagrees. Dorothy White told them that she saw the handle of a weapon in his hand with the rest of the weapon under a pillow. Officer Larson saw Huddleston on the couch with his hand under a pillow. His observations confirmed Dorothy White's observation. The officers reasonably believed that Huddleston was armed.

Huddleston also argues that no exigent circumstances existed because he was sleeping, and Dorothy White told the officers not to worry because

Huddleston was not going anywhere.   The Court again disagrees. Huddleston was in a winter coat, sitting on a couch, holding a gun.  He was not asleep in bed.  There was a real risk that he could wake up at any time, start shooting and flee.

Huddleston also cites several cases for the proposition that the existence of contraband in the Residence did not create exigent circumstances.  <u>Mincey v. Arizona</u>, 437 U.S. 385, 393-94 (1978); <u>Chapman v. United States</u>, 365 U.S. 610, 615 (1961); <u>Johnson v. United States</u>, 333 U.S. 10, 15 (1948);  <u>Agnello v. United States</u>, 269 U.S. 20, 33 (1925). These cases are not applicable because the problem was not the existence of contraband in the Residence.  The problem was that there was a trespasser with a violent history who was sitting on the couch with a gun in his hand, waiting for the person he had threatened.  The risk of violence was real.

Finally, Huddleston argues that Dorothy White did not think this situation was an emergency because she did not dial "911" to call the police, but used the regular police telephone number.  <u>T.</u>, at 80.  Huddleston speculates that the officers knew that Dorothy White did not dial "911", but cites no evidence in the record to support this supposition.  Regardless, the officers assessed the situation once they arrived.   Based on the

8

information they were given, they reasonably believed that an individual with a history of violence was trespassing in a house with a gun, waiting for the woman he had threatened.  They reasonably believed that their safety and the safety of the neighborhood was at risk.  The officers had a reasonable belief that exigent circumstances existed.  The warrantless entry into the Residence was reasonable under the Fourth Amendment.

THEREFORE, Defendant Timothy Huddleston's Objections to Report and Recommendation on Motion to Suppress (d/e 22) are OVERRULED. The Court adopts the Report and Recommendation (d/e 18).  The Motion to Quash Arrest and Suppress Evidence (d/e 9) is DENIED.

IT IS THEREFORE SO ORDERED.

ENTER:   October 3, 2007

FOR THE COURT:

s/  Jeanne E. Scott
JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE